E-FILED
Thursday, 06 March, 2025  12:07:18 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| ELM ONE CALL LOCATORS, INC. and ONE CALL LOCATORS, LTD. ) ) ) Plaintiffs, ) ) ) v. ) ) LYTX, INC. ) ) Defendant. ) | Case No.: 25 – cv - 1086 |

## COMPLAINT

NOW COMES Plaintiffs ELM One Call Locators, Inc. and One Call Locators, Ltd. d/b/a ELM Locating & Utility Services (collectively "Plaintiffs"), by and through their attorneys, and for their Complaint allege as follows:

### PARTIES

1. Plaintiff ELM One Call Locators, Inc. (hereinafter "One Call Locators") is organized and existing under the laws of the State of Illinois, maintains a principal place of business at 60 State Street, Suite 201, Peoria, Illinois 61602, and does business within this Judicial District.

2. Plaintiff One Call Locators, Ltd. d/b/a ELM Locating & Utility Services, (hereinafter "ELM") is organized and existing under the laws of the State of Montana, is an operating company wholly owned by One Call Locators and maintains a principal place of business at 60 State Street, Suite 201, Peoria, Illinois 61602, and does business within this Judicial District.

3. Defendant Lytx, Inc. (hereinafter "Lytx") is organized and existing under the laws of the State of Delaware and maintains its principal place of business at 9785 Towne Centre Drive, San Diego, California, 92121.

## JURISDICTION AND VENUE

4. This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that ELM and One Call Locators are citizens of different states from Lytx and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, 28 U.S.C. § 1332(a).

5. Venue is proper in Peoria, Illinois because Plaintiffs' principal places of business are in Peoria, the contract at issue was negotiated, approved and signed in Peoria, Lytx is believed to be licensed to do business in Illinois, Lytx has contracted for business with Plaintiffs in Peoria. Lytx issues invoices to the Plaintiffs in Peoria, any and all payments to Lytx for products and services in the past have issued from Plaintiffs in Peoria, any and all payments for damages, if any, outlined further below will come from Peoria, and the events giving rise to the causes of action occurred or had an impact on Plaintiffs in Peoria.

## FACTUAL BACKGROUND

6. ELM is in the business of locating underground utilities, an activity that is, for public safety reasons, regulated by law. Any party that intends to dig must first call 811 and request that underground utility lines (or "facility lines") in the area be identified or "marked."

7. ELM contracts with utility companies to perform the service of locating and marking their utility lines.

8. ELM locates underground utilities and is governed by laws that govern when a person or company intends to dig the ground at their premises. The person or company intending to dig the ground must first call 811, the 811 Call Center, and request that underground utility lines in the area be identified or "marked".

2

9. Upon receiving a dig request, the 811 Call Center generates a locate ticket that is sent to utility companies having underground utility lines in the area of the dig. Those utility companies must properly mark their utility lines (by placing paint, flags and/or other markers on the ground) within the time frame specified by law.

10. ELM is entrusted with the public's safety and to protect a family's home and a person's business.

11. To do this, ELM has over 1400 locate technicians, working across 17 states, each with a vehicle and they perform tens of thousands of locates per day with one of the lowest all-around damage ratios in the industry.

12. As part of ELM's safety efforts it purchases and installs video safety cameras in its vehicles which are designed to target risky driving behaviors and alert† drivers to help them self-correct unsafe behaviors in the moment. Monitoring drivers is intended to empower them to make better choices behind the wheel, before an accident occurs.

13. For the last 8 years, ELM has purchased its vehicle safety cameras from the Defendant.

14. Originally, ELM and Lytx entered into a Master Purchase Agreement (hereinafter the "Agreement") dated April 3, 2017, with an initial 60-month time period that has long since expired.

15. ELM has, at all times, engaged in good faith efforts to comply with the terms of the Agreement.

16. ELM continued to purchase additional vehicle safety cameras from Lytx as its business grew.

17. In 2024, ELM attended a trade show and visited a Samsara, Inc. ("Samsara") trade booth.

18. After visiting their booth, ELM followed up with Samsara for a demonstration of their safety cameras and software.

3

19. Samsara provides video cameras and related services including those that empower drivers to build safe habits by keeping drivers focused on the road with AI-based voice coaching and Virtual Coach.

20. The Samsara safety cameras and software further coach drivers with custom workflows, the intent being to maximize driver coaching effectiveness using robust coaching tools and gamification to incentivize safer driving.

21. Samsara also offered top-tier support and implementation services to ensure a smooth and successful transition to a video-based safety program.

22. ELM did a test run with the Samsara safety camera and software.

23. ELM found the Samsara safety cameras and software to provide better features as compared with the Lytx safety cameras and software. Those features include in cab coaching and real time view of the vehicle with no lag time as to driving characteristics and identify distracted driving.

24. Improved functionality translates to a safer work force and ELM deemed Samsara to be such a safety leader.

25. Following the trade show and demonstration, ELM contacted Lytx, as its long-time partner, regarding the added features offered by Samsara.

26. ELM determined that Samsara was a more robust partner in creating safer operations.

27. ELM made the decision to switch from Lytx to Samsara safety cameras and software.

28. This switch was in an effort to provide the best safety features for its employees.

29. Safety has been improved ELM using the Samsara safety cameras and software.

30. Paragraph 5 of the Agreement provides that "Client may terminate this Agreement, in whole or in part, for convenience at any time…Early Termination fees shall not apply to any Services provided on a month-to-month basis."

31. On February 11, 2025, ELM notified Lytx that it would be terminating the Agreement as of February 28, 2025, pursuant to a Termination for Convenience clause in the Agreement.

32. In response, on February 11, 2025, ELM received a letter from Lytx's in-house general counsel Shelley Bennett (hereinafter "Ms. Bennett"), suggesting impropriety ("We hope this is not an attempt by our competitor to tortiously interfere with our existing agreement, by inducing you to terminate your relationship with Lytx under the misguided expectation that you would not need to honor your contractual commitments to Lytx").

33. Lytx followed up claiming that ELM owed Lytx monies as a termination fee.

34. On February 14, 2025, ELM extended its termination for another month ending on March 31, 2025.

35. In her letter dated February 18, 2025, Ms. Bennett acknowledged the new termination date of March 31, 2025, claiming that ELM still owed monies in the amount of $311,875.55 to Lytx as a fee for terminating the Agreement.

36. ELM has been charged by Lytx for fees not contemplated by the termination clause of the Agreement.

37. ELM paid for the Lytx video cameras it purchased in full when each was purchased. In other words, ELM did not lease or pay for the video cameras over time or take them on credit. They were purchased outright.

38. ELM paid for services related to the hardware it purchased on a month-to-month basis.

39. ELM has received correspondence from Lytx threatening litigation if ELM did not pay certain sums to it as a termination fee.

40. ELM's counsel sent a letter dated February 14, 2025, to Ms. Bennett asking her what she intended to suggest when she wrote "please be advised that we fully intend to enforce or contractual rights".

41. With what ELM interpreted as a response to its question, ELM received a letter dated February 26, 2025, from Mr. Gonnella, Lytx's outside litigation counsel, informing ELM that his office had been retained by Lytx.

42. In a phone call, Mr. Gonnella confirmed he had been retained to file a lawsuit against ELM.

## **FIRST CLAIM FOR RELIEF**

(Declaratory Relief Pursuant to Fed.R.Civ.P. 57 and 28 U.S.C. § 2201)

43. ELM and One Call Locators repeat, re-allege and incorporate by reference each and every previous allegation.

44. An actual controversy exists between the parties concerning the rights of ELM to enter into a contract with Samsara.

45. That controversy is set forth it the February 11, 2025, letter ELM received from Lytx's in-house general counsel.

46. The controversy is whether ELM's contract with Samsara constitutes an attempt by Samsara to tortiously interfere with ELM and/or Samsara.

47. The controversy is further whether Samsara induced ELM to terminate its relationship with Lytx.

48. Plaintiffs desire a judicial interpretation of their rights and duties as to their contractual relationship with Samsara.

49. Pursuant to Fed.R.Civ.P. 57 and 28 U.S.C. §2201, Plaintiffs request that this Court declare the rights of ELM's contractual relationship with Samsara and issue an order determining the actual rights of the parties.

**SECOND CLAIM FOR RELIEF**

(Declaratory Relief Pursuant to Fed.R.Civ.P. 57 and 28 U.S.C. § 2201)

50. ELM and One Call Locators repeat, re-allege and incorporate by reference each and every previous allegation.

51. An actual controversy exists between the parties concerning the rights of ELM to terminate the Agreement.

52. The Agreement is the governing document between the parties as to its historical contractual relationship.

53. Lytx claims that ELM owes termination fees for terminating the Agreement for convenience.

54. ELM has complied with the termination provision of the Agreement.

55. The amount of the demanded termination fees is in violation of the terms of the Agreement.

56. Lytx has threatened litigation to recover termination fees.

57. ELM and One Call Locators extended the termination one month in an effort to resolve this matter.

58. An actual controversy exists between the parties concerning the rights and duties under the Agreement.

59. Additionally the Agreement terminated several years ago, such that any terms therein are not enforceable.

60. Plaintiffs desire a judicial interpretation of their rights and duties under the Agreement including that the Agreement is no longer valid, has expired, and that the terms therein are no longer enforceable.

61. Plaintiffs also desire a judicial interpretation of their rights and duties under the Agreement, and a judicial declaration as to the amounts owed, if any, by ELM under the Agreement.

62. Pursuant to Fed.R.Civ.P. 57 and 28 U.S.C. §2201, Plaintiffs request that this Court declare the rights of the parties under the Agreement and issue an order determining the actual rights of the parties and any amounts actually due.

WHEREFORE, ELM and One Call Locators respectfully pray for judgment of this Court against the defendant Lytx as follows:

(a) Declaring the rights of ELM to enter into a contract with Samsara;

(b) Declaring that the contract between ELM and Samsara does not constitute an attempt by Samsara to tortiously interfere with ELM and/or Samsara.

(c) Declaring that Samsara did not induced ELM to terminate its relationship with Lytx.

(d) Declaring the rights of the parties and the appropriate amount of a termination fees (if any) to be paid under the terms of the Agreement;

(e) Awarding pre-judgment and post-judgment interest, attorney fees and costs of this action against Lytx to the extent permitted by law; and

(f) Ordering other and further relief as the Court deems proper under the circumstances.

Dated: March 6, 2025                                          Respectfully submitted,

                                                              *s/ Sam Zabek*

*Counsel for ELM One Call locators, Inc. and,*
*One Call Locators, Ltd. d/b/a ELM Locating & Utility Services.*

Samuel B. Zabek
GRAVES LAW OFFICES
60 State Street, Suite 201
Peoria, Illinois 61602
Telephone: 309-673-8422

Facsimile: 309-673-8432
szabek@glo-pc.com